## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAHFIR AZIZ YASEEN,
  *Plaintiff*,

  v.                                        No. 3:23-cv-1042 (OAW)

BRISTOL POLCE DEPT. ET AL..
  *Defendants.*

## ORDER GRANTING MOTION TO DISMISS THE AMENDED COMPLAINT

In this action, self-represented Plaintiff Dahfir Aziz Yaseen ("Plaintiff") appears to bring an equal protection claim pursuant to 42 U.S.C. § 1983.[1] He alleges that he was denied services, subjected to inferior treatment when services were provided, and faced retaliation for filing complaints, all due to discrimination based on his national origin, religion, and ancestry. *See* ECF No. 35-5, at 2-3.

This case was removed from New Britain Superior Court after Mr. Yaseen filed his three-page complaint asserting claims against Bristol Police Department. ECF Nos. 1, 2. Defendant Bristol Police Department moved to dismiss the Complaint (ECF No. 22), but Plaintiff filed the operative Amended Complaint shortly thereafter and named two additional defendants: the City of Bristol, and the Bristol Police Commission. ECF No. 30. Defendants seek to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the below reasons, their motion to dismiss is **GRANTED**.

---

[1] While the Amended Complaint does not specify a cause of action, courts "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)). Plaintiff refers to his claim as "a § 1983 claim" in his response to Defendants' motion to dismiss. ECF No. 37, at 2.

I. **BACKGROUND**[2]

The Amended Complaint details three interactions between the plaintiff and the Bristol Police Department ("BPD").  First, on or around September 2020, Mr. Yaseen "went to the Bristol Police Department [and made] a complaint that [Ayub] Alhasani and others were threatening to rape and sexually assault his wife," and "post her pictures on adult websites as an act of revenge porn."  Am. Compl. ¶ 19.  The BPD told Mr. Yaseen that there was nothing they could do and directed him to contact Homeland Security.[3]  *Id.* ¶ 20.  Plaintiff subsequently contacted the Southington Police Department ("SPD") and its officers referred him to the FBI.  *Id.*

Second, on or about July 22, 2021, Mr. Yaseen returned to the BPD concerning a different set of allegations against Mr. Alhasani.[4]  *Id.* ¶ 8.  The Amended Complaint recounts a conversation that Plaintiff's brother, Samir, had with Mr. Alhasani.  During that conversation, Mr. Alhasani purportedly told Samir "I am calling you and letting you know just in case something will happen to Dahfir A. Yaseen and his family."[5]  *Id.* ¶ 12.  Mr. Alhasani also allegedly promised to "continue to harass the plaintiff and his family."  *Id.* ¶ 6.  Samir shared the comments with Plaintiff, who contacted the BPD to report the perceived threat.  *Id.* ¶ 8.  Officer Jacobs of the BPD investigated and called Samir to

---

[2] The court takes judicial notice of the documents submitted to the Connecticut State Commission on Human Rights and Opportunities ("CHRO") and the findings thereof, as is consistent with *Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012) ("Agency determinations and administrative findings are public records of which a court may properly take judicial notice."), *aff'd*, 541 F. App'x 71 (2d Cir. 2013).

[3] The Amended Complaint is unclear as to whether Plaintiff told BPD to call Homeland Security, or whether he was instructed to contact Homeland Security.

[4] The underlying administrative proceedings indicate that Mr. Yaseen requested to speak to the FBI and told Officer Jacobs that he "made reports to the FBI about certain individuals that may be connected to the Iranian Militia."  ECF No. 35-7, at ¶ 5.  When Officer Jacobs (BPD) asked with whom Plaintiff had spoken at the FBI, Plaintiff declined to provide a name.  *Id.*  When Officer Jacobs contacted the FBI, "the FBI did not know who [Plaintiff] was because they had never spoken with him.  *Id.* at ¶ 7.

[5] Notably, Plaintiff's previous complaints to the CHRO contradict the Amended Complaint in this action as to what Mr. Alhasani is alleged to have told Samir.  *See, infra* at n.6.

corroborate Plaintiff's allegations.[6]   *Id.* ¶¶ 8-9.   The BPD provided Mr. Yaseen with an incident report, but Plaintiff concluded that it did not reflect what was discussed during the investigatory call.   *Id.* ¶¶ 10-11.   "Integral language which would show the veracity of the complaint" was omitted from the report.[7]   *Id.*   Additionally, "highly concerning threats of violence and harassment stated by Alhasani regarding the plaintiff were completely left out of the incident report."[8]   *Id.*   The BPD stated that "there was nothing they could do based on the incident report and that Alhasani did not threaten the plaintiff."   *Id.* ¶ 16.   The imprecise incident report, Plaintiff alleges, "allowed the Bristol Police Department to decide not to further investigate the plaintiff's claim."

Third, on April 23, 2023, Mr. Yaseen again contacted the BPD regarding his monetized YouTube account being hacked and disabled.[9]   In response, the BPD provided an unredacted report which included "bizarre references to the Prime Minister of Iraq and

---

[6] The call was recorded, and excerpts of that call are included in the underlying administrative record.  *See, e.g.,* ECF No. 35-7, ¶ 15 ("Samir stated that Mr. Alhasani was upset about one of the Complainant's vlogs that accused him of being a Shia militia member.   Mr. Alhasani told Samir that he and his family would 'make supplication against [the Complainant] and against his family.'")

[7] The CHRO findings included that "Samir testified that he 'could not say for sure' whether Mr. Alhasani's statements were threats toward [] [Yaseen], and that he did not know whether Mr. Alhasani was a danger to [Yaseen] and his family.   [Yaseen] testified that Officer Jacobs 'changed so many things' about what Samir said in his incident report; however, the report was a summary of Officer Jacobs's understanding of the situation, not a transcript of the conversation.   Given Samir's uncertainty about whether Mr. Alhasani would act against the [Yaseen], this investigator believes Officer Jacobs' written summation of his conversation with Samir to be reasonable."   ECF No. 35-7, ¶ 16.

[8] The Amended Complaint specifies that Officer Jacobs asked Samir whether Alhasani had the ability to do something in the future and Samir responded "[w]ell, I am not sure, I don't know him well.   All I know is that he's a guy from New Britain."   Plaintiff contends Officer Jacobs contorted that statement and drafted the report to reflect that Samir said he would "not expect Ayoob[sic] [Alhasani] to take any action against his brother Dahfir and said that he felt Ayoob [sic] was only venting his frustration to Samir."   Am. Compl. ¶¶ 13-15.

[9] In his Complaint to the CHRO, Yaseen stated "I run a YouTube channel related to current events in Iraq" and "[o]n this YouTube channel, I discussed things related to an Iranian-backed Iraqi militia."   ECF No. 35-3, 3-4.   According to the CHRO's findings, "[Yaseen] testified that he is a Sunni Muslim and runs a YouTube channel in which he discusses his opposition to Shia Islam and to the control of Iran on Iraq."   ECF No. 35-7, at 6 (internal quotation marks omitted).

had changed the name of the suspect to and from various Arabic sounding names." *Id.* ¶¶ 23-24.

Plaintiff alleges the "culmination of these interactions with Bristol Police Department shows a pattern of discrimination failing to appropriately respond to the plaintiff's complaints, and the bizarre shifts in the defendant's incident reports brings an inference of discrimination." *Id.* ¶ 25.

## II. <u>LEGAL STANDARD</u>

For motions brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction…when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

To survive a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

4

In deciding a motion to dismiss, the court must accept as true all well-pleaded factual allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *Bryant v. Am. Fedn. of Musicians of the United States*, 666 Fed. Appx. 14, 16 (2d Cir. 2016). The court "next consider[s] the factual allegations in [the] [Amended [C]omplaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. The court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Where, as here, the complaint was filed pro se, it must be construed liberally with special solicitude and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotations marks omitted). But this court "need not manufacture claims of error for a Plaintiff proceeding pro se." *Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024)

### A. 12(b)(1) Motion to Dismiss Bristol Police Department and Police Commission

"It is elemental that in order to confer jurisdiction on the court [a party] must have an actual legal existence[;] that is[,] he or it must be a person in law or a legal entity with legal capacity to sue [or be sued]." *Isaac v. Mount Sinai Hospital*, 3 Conn. App. 598, 600, 490 A.2d 1024 (1985). Entities which have no legal existence cannot sue or be sued. *Id.*

Mr. Yaseen names the Bristol Police Department as a defendant in this matter. "Municipal police departments, however, are not entities that can be sued under state law." *Khadafy v. Derby Police Dep't*, No. 21-cv-465 (KAD), 2021 WL 1390377, 2021 U.S.

Dist. LEXIS 71084, *9 (D. Conn. Apr. 13, 2021); *see Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 163-164 (D. Conn. 2005); *see also Henry v. Cty. of Nassau*, 6 F.4th 324, 336 (2d Cir. 2021), *Cutrone v. City of Milford*, No. 22-cv-1177 (AWT), 2023 WL 4901520, 2023 U.S. Dist. LEXIS 132910, *5 (D. Conn. Aug. 1, 2023).  The same can be said for the Bristol Police Commission.[10]

No amendment could possibly cure the defects in the plaintiff's complaint. Accordingly, the court grants Defendants' 12(b)(1) motion to dismiss with prejudice as to the BPD and Bristol Police Commission.  *Danis v. Moody's Corp.*, 627 Fed. Appx. 31, 32 (2d Cir. 2016) (summary order) (affirming dismissal with prejudice due to futility); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile. Such a futile request to replead should be denied.").

### B. Bristol's 12(b)(6) Motion to Dismiss Plaintiff's § 1983 Equal Protection Claim

Turning to his allegations against the City of Bristol, Plaintiff alleges that it discriminated against him by not offering him protective services, by conducting an insufficient investigation, and by retaliating against him for filing a complaint.  *See* ECF 35-5, at 2.  He alleges that the City treated him differently because of his national origin, religion, ancestry, and his prior complaints.

Cities may not discriminatorily withhold services based on religion or national origin.  *DeShaney v. Winnebago County of Dep't of Soc. Servs.*, 489 U.S. 189, 197 n. 3 (1989) (the state may not selectively deny its protective services to certain disfavored

---

[10] Plaintiff appears to concede as much in his brief, "Defendants' Motion to Dismiss may apply to the Police Department and the Commission, however, the [c]ourt, per the [d]efendants' brief, has jurisdiction over the City of Bristol…" ECF No. 37, at 4.

minorities without violating the Equal Protection Clause).   However, a municipality only may be held liable for the acts of its employees or agents if the harm was inflicted through the execution of its policy, practice, or custom.  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).   "A municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Monell*, 436 U.S. at 690-91.  Absent that custom or policy, cities and towns are not liable under a theory of *respondeat superior*, or put another way, municipalities are not vicariously liable based solely on the existence of an employer-employee relationship.  *Id.* at 692.

To satisfy the plan or custom requirement, "a plaintiff must allege the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Iacovangelo v. Corr. Med. Care, Inc.*, 624 Fed. Appx. 10, 13 (2d Cir. 2015) (citing *Jones v. Town of East Haven*, 691 F.3d 80-81).  This is a high burden, as a persistent and widespread employee practice must be "so manifest as to  imply the constructive acquiescence of senior policy-making officials."  *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 297-298 (2d Cir. 2020).  Isolated acts are not enough.  *Jones v. Town of East Haven*, 691 F.3d 81.

Plaintiff's threadbare Amended Complaint provides little detail reflecting a plan, custom, policy, practice, or usage that would satisfy his burden.   All that exists is his conclusory allegation that the BPD "shows a pattern of discrimination" in the way that it

handles his complaints.  But that assertion is belied by Plaintiff's Amended Complaint.  *See* Am. Compl. ¶ 9.  Officer Jacobs performed an investigation and interviewed witnesses.[11]  Even if he had not, "it is well established that '[t]here is no . . . constitutional right to an investigation by government officials.'" *Troy v. City of New York*, No. 13-cv-5082 (AJN), 2014 U.S. Dist. LEXIS 136339, 2014 WL 4804479, * 6 (S.D.N.Y. Sept. 25, 2014) (quoting *Stone v. Dept. of Investigation of City of New York*, No. 91-cv-2471 (MBM), 1992 U.S. Dist. LEXIS 1120, 1992 WL 25202, at * 2 (S.D.N.Y. Feb. 4, 1992)); *see also Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35-36 (2d Cir. 2010) (finding that parents did not have a protected property interest in an investigation into their son's death), *Rodrigues v. Village of Larchmont*, N.Y., 608 F.Supp. 467, 472 (S.D.N.Y. 1985) (dismissal of claim against police department for refusing to allow plaintiff to file a complaint and refusal to investigate on the ground that "[t]here is certainly no constitutional right to be protected from criminal activity").

"[A]bsent any allegation of a custom or policy…tending to support, at least circumstantially . . . an inference of an official custom or policy," Yaseen's § 1983 claim ought to be dismissed.  *Wallace v. City of New York*, 842 Fed. Appx. 708, 710 (2d Cir. 2021) (citing *Montero v. City of Yonkers*, 890 F.3d 386, 404 (2d Cir. 2018) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).  Accordingly, Plaintiff's Amended Complaint is dismissed without leave to amend.[12]

Further, Plaintiff's equal protection claim also fails for failure to demonstrate any class-based animus.  The Equal Protection Clause is "essentially a direction that all

---

[11] Among other things, Plaintiff claimed the FBI tricked him.  Further, there are conflicting statements as to when (if ever) he contacted the FBI.  *See, e.g.,* ECF 35-7 ¶ 10.

[12] Even if the court construed the Amended Complaint to allege a violation of due process, it would fail for similar reasons.

persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  A Section 1983 equal protection claim requires Plaintiff to prove that the government intentionally discriminated against him with no constitutionally acceptable justification.  *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009) ("Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause."); *Eagleston v. Guido*, 41 F.3d 865, 878 (2d Cir. 1994).  Further, "[i]n police failure-to-serve cases, the courts consistently have required more evidence of discriminatory intent than a simple failure of diligence, perception, or persistence in a single case involving minority victims." *Carmichael v. City of New York*, 34 F. Supp. 3d 252, 262 (S.D.N.Y 2014).

Of the several avenues to bring a Section 1983 equal protection claim, Plaintiff appears to allege his under the "class-of-one" theory.  A class-of-one claim is one in which "the [p]laintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks omitted).  "We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

At bottom, Plaintiff alleges he was treated differently based on his national origin, religion, ancestry, but there is no evident class-based animus from Officer Jacobs, the City of Bristol, or any other of the named defendants.  Plaintiff simply does not identify how he was treated differently from others.  Thus, his claim must be dismissed. *See Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) (affirming dismissal

of § 1983 class-of-one claim because plaintiff did not specify comparators); *Chance v. Reed*, 538 F. Supp. 2d 500, 507-08 (D. Conn. 2008) (dismissing equal protection claim because plaintiff did not detail the existence of any similar situated individual).

## C. <u>First Amendment Retaliation Claim</u>

To the extent Plaintiff's allegations relating to retaliation are subject to scrutiny under the First Amendment, Plaintiff's Amended Complaint does not plausibly allege the City's actions were motivated or substantially caused by exercising his right to file a report, even if the court presumes such a right exists. *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). It is speculative at best that the police were even aware of Plaintiff's previous reports. *See Goodman v. City of New York*, No. 23-CV-9648 (JGLC) (GWG), 2024 U.S. Dist. LEXIS 155779, *6 (S.D.N.Y. Aug. 29, 2024). Thus, to the extent the Amended Complaint could be construed to include such a claim, it also is dismissed.

## D. <u>Opportunity to Amend Complaint</u>

Finally, the court considers whether Plaintiff ought to be provided an opportunity to further amend his complaint. The court declines such leave because doing so would be futile considering the absence of any indication that similarly situated persons were treated more favorably than Plaintiff or that his treatment was based on impermissible considerations. *See, e.g., Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (holding that although district courts "should frequently provide leave to amend before dismissing a pro se complaint," leave to amend "is not necessary when it would be futile"). Indeed, Plaintiff already amended his complaint once and this would be the third opportunity to tell his story. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019).

**CONCLUSION**

Accordingly, Defendants' Motion to Dismiss (ECF No. 35) is GRANTED.  The Amended Complaint (ECF No. 30) is DISMISSED with prejudice.  The Clerk of Court respectfully is asked to please close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2024.

                                                              /s/

                                                     Omar A. Williams
                                                     United States District Judge

11